# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| A.S., a minor, by and through her natural parents and next friend, J.S. and R.S, *et al.*, | ) ) ) ) |
| Plaintiffs, | ) ) ) |
| vs. | ) ) |
| HORACE MANN INSURANCE COMPANY, | ) ) ) ) |
| Defendant. | ) |

Civil Action No. CV-12-S-271-NE

## MEMORANDUM OPINION AND ORDER

Plaintiffs, A.S., J.S., and R.S., commenced this action in the Circuit Court of Madison County, Alabama, against defendant, Horace Mann Insurance Company.[1] Defendant removed the case to this court on January 25, 2012.[2] Plaintiffs assert a single claim pursuant to Section 27-23-2 of the Alabama Code, under which a plaintiff can "reach and apply" insurance proceeds to satisfy a prior judgment against an insurance policyholder.[3] Plaintiffs had previously settled an action they brought in Madison County Circuit Court against William Reaves, and a consent judgment was

---

[1] *See* doc. no. 1-2 (Complaint).

[2] *See* doc. no. 1 (Notice of Removal).

[3] Doc. no. 1-2 (Complaint) ¶¶ 2-12.

entered against Reaves.[4] Reaves, who was a teacher at the time of the events giving rise to this suit, had an insurance policy with defendant through the Alabama Educational Association, and defendant denied Reaves's claim for coverage in the underlying litigation.[5] Plaintiffs' complaint asserts that Reaves's insurance policy with defendant provided coverage in the full amount of the settlement.[6]

The case is now before the court of defendant's motion for summary judgment.[7] Plaintiffs have not responded to the motion, despite the fact that it was filed over two months ago. Consequently, defendant has filed a "motion for entry of summary judgment."[8] Upon consideration, the motions are due to be granted.

## I. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 provides that summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In other words, summary judgment is proper "after adequate time for discovery and upon

---

[4] *See* doc. no. 19-1 (Defendant's Summary Judgment Brief) ¶¶ 2, 5; doc. no. 20-3 (Complaint in *A.S. et al. v. Reaves, et al.*, No. CV-2005-217 (Mad. Co. Ala. Cir. Ct., Feb. 2, 2005)); doc. no. 20-5 (Settlement Agreement).

[5] *See* doc. no. 20-2 (Insurance Policy), at 1-2; *see also* doc. no. 19-1 (Defendant's Summary Judgment Brief) ¶ 6; doc. no. 20-1 (Affidavit of Kaye Green) ¶¶ 1-2.

[6] Doc. no. 1-2 (Complaint) ¶ 9.

[7] Doc. no. 17.

[8] Doc. no. 21.

motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).[9]

According to the court's Uniform Initial Order, "material facts set forth in the statement [of facts] required of the moving party will be deemed to be admitted for summary judgment purposes *unless* controverted by the response of the party opposing summary judgment."[10] *See also* Fed. R. Civ. P. 56(e)(2) (permitting such action by the court). Plaintiffs in this case have not filed a brief or evidence in opposition to defendant's motion for summary judgment. Even so,

> the district court cannot base the entry of summary judgment on the mere fact that the motion was unopposed, but, rather, must consider the merits of the motion. *See Dunlap v. Transamerica Occidental Life Ins. Co.*, 858 F.2d 629, 632 (11th Cir.1988) (*per curiam*). The district court need not *sua sponte* review all of the evidentiary materials on file at the time the motion is granted, but must ensure that the motion itself is supported by evidentiary materials. *See id.* At the least, the district court must review all of the evidentiary materials submitted in support of the motion for summary judgment.

*United States v. One Piece of Real Property*, 363 F.3d 1099, 1101-02 (11th Cir. 2004). Importantly, "there is no burden upon the district court to distill every potential

---

[9] Rule 56 was amended, effective December 1, 2010, in conjunction with a general overhaul of the Federal Rules of Civil Procedure. The Advisory Committee was careful to note, however, that the changes "will not affect continuing development of the decisional law construing and applying these phrases." Adv. Comm. Notes to Fed. R. Civ. P. 56 (2010 Amends.). Consequently, cases interpreting the previous version of Rule 56 are equally applicable to the revised version.

[10] Doc. no. 12 (Uniform Initial Order), at 15.

argument that could be made based upon the materials before it on summary judgment. Rather, the onus is upon the parties to formulate arguments." *Solutia, Inc. v. McWayne, Inc.*, 672 F.3d 1230, 1239 (11th Cir. 2012).

## II.  FACTUAL BACKGROUND

A.S., who suffers from a mental disability, was enrolled in fifth-grade special education classes at Madison County Elementary School during the 2002-2003 school year.[11] William Ford Reaves was one of A.S.'s teachers.[12] Sometime during the 2002-2003 term, the school held a "Kite Day" outdoors for the students.[13] After students and teachers were outside for the festivities, Reaves approached A.S. and convinced her to accompany him to his private office inside the school building.[14] Once inside his office, Reaves locked the door and began rubbing A.S's arms, legs, and back.[15] A.S. asked Reaves to stop, but instead he forced her onto a couch and raped her.[16] During the course of his heinous act, Reaves also threatened to kill A.S.'s

---

[11] *See* doc. no. 19-1 (Defendant's Summary Judgment Brief) ¶ 2; doc. no. 20-4 (Deposition of A.S.), at 58, 150; doc. no. 20-6 (Deposition of William Ford Reaves), at 170-71.

[12] Doc. no. 20-4 (Deposition of A.S.), at 58; doc. no. 20-6 (Deposition of William Ford Reaves), at 169-70.

[13] *See* doc. no. 19-1 (Defendant's Summary Judgment Brief) ¶ 2; doc. no. 20-4 (Deposition of A.S.), at 59-61, 63.

[14] *See* doc. no. 19-1 (Defendant's Summary Judgment Brief) ¶ 2; doc. no. 20-4 (Deposition of A.S.), at 63, 66-69, 158.

[15] Doc. no. 20-4 (Deposition of A.S.), at 73, 75-76, 92; *see also* doc. no. 19-1 (Defendant's Summary Judgment Brief) ¶ 2.

[16] Doc. no. 20-4 (Deposition of A.S.), at 51, 79, 86-87, 92-93; *see also* doc. no. 19-1 (Defendant's Summary Judgment Brief) ¶ 2.

parents and "trash" her house.[17]

A.S. suffered nightmares and stomach sickness as a result of the rape.[18] Soon after the incident, she transferred to a different school.[19] Eventually, she revealed her ordeal to two friends, as well as in a letter addressed to her deceased brother.[20] The friends took A.S. to speak with a school guidance counselor, at which point she recounted the rape to the counselor and another teacher.[21]

In February of 2005, A.S. and her parents, J.S. and R.S., sued Reaves, as well as numerous other individuals or entities, in the Circuit Court of Madison County, Alabama, for state law claims arising out of the rape.[22] The defendant in the *present* case, Horace Mann Insurance Company, provides insurance to members of the Alabama Educational Association ("AEA").[23] Reaves was a member of the AEA.[24]

---

[17] Doc. no. 20-4 (Deposition of A.S.), at 93, 159; *see also* doc. no. 19-1 (Defendant's Summary Judgment Brief) ¶ 2.

[18] Doc. no. 20-4 (Deposition of A.S.), at 178.

[19] Doc. no. 20-4 (Deposition of A.S.), at 42, 161, 167-68; *see also* doc. no. 19-1 (Defendant's Summary Judgment Brief) ¶ 2.

[20] Doc. no. 20-4 (Deposition of A.S.), at 128-29, 132-34; *see also* doc. no. 19-1 (Defendant's Summary Judgment Brief) ¶ 2.

[21] Doc. no. 20-4 (Deposition of A.S.), at 128-30, 132-35, 140, 179; *see also* doc. no. 19-1 (Defendant's Summary Judgment Brief) ¶ 2.

[22] Doc. no. 19-1 (Defendant's Summary Judgment Brief) ¶ 2; *see* doc. no. 20-3 (Complaint in *A.S. et al. v. Reaves, et al.*, No. CV-2005-217 (Mad. Co. Ala. Cir. Ct., Feb. 2, 2005)).

[23] *See* doc. no. 20-2 (Insurance Policy), at 1-2; *see also* doc. no. 19-1 (Defendant's Summary Judgment Brief) ¶ 6; doc. no. 20-1 (Affidavit of Kaye Green) ¶ 1.

[24] Doc. no. 20-1 (Affidavit of Kaye Green) ¶ 1; *see also* doc. no. 19-1 (Defendant's Summary Judgment Brief) ¶ 6.

Accordingly, defendant furnished Reaves with a defense attorney in the *underlying*, state-court case, and paid other costs associated with that litigation.[25] However, defendant denied liability coverage for Reaves's actions, did not direct Reaves's defense, and refused to participate in settlement discussions of the underlying case.[26] Defendant opined to Reaves in a March 7, 2005 letter that, as a matter of law, the allegations in the underlying complaint fell outside the scope of its liability coverage.[27]

The insurance policy at issue covers losses "sustained by the **Insured** by reason of liability imposed by law for damage caused by an **occurrence** in the course of the **Insured's educational employment activities**."[28] The policy defines "educational employment activities" as activities performed by the insured:

1. pursuant to the express or implied terms of his or her employment by an **educational unit**;

2. at the express request or with the express approval of his or her supervisor, provided that, at the time of such request or approval, the supervisor was performing what would appear to be his or her **educational employment activities** within the meaning of Part II(E)(1); or

---

[25] Doc. no. 20-1 (Affidavit of Kaye Green) ¶ 2; doc. no. 20-5 (Settlement Agreement) ¶ 6; doc. no. 20-8 (Letter of Mar. 7, 2005 from Attorney for Horace Mann Insurance Company to William Reaves), at 1, 6; *see also* doc. no. 19-1 (Defendant's Summary Judgment Brief) ¶ 6.

[26] Doc. no. 20-1 (Affidavit of Kaye Green) ¶ 2; doc. no. 20-5 (Settlement Agreement) ¶¶ 6, 11; *see also* doc. no. 19-1 (Defendant's Summary Judgment Brief) ¶ 6.

[27] Doc. no. 20-8 (Letter of Mar. 7, 2005 from Attorney for Horace Mann Insurance Company to William Reaves), at 4-5.

[28] Doc. no. 20-2 (Insurance Policy), at 3 (boldface emphasis in original).

    3.    as a member of a state board or commission which has as its primary purpose the licensure or certification of educators, or the setting of standards for such licensure or certification.[29]

The policy excludes from its liability coverage "intentional damages," defined as "[**o**]**ccurrences** involving *damages which are the intended consequences of action* taken by the **Insured** or at the **Insured**'s direction."[30]

On April 6, 2009, Reaves reached a settlement agreement in the underlying case with A.S. and her parents that provided for the entry of a consent judgment in the amount of $1,000,000.[31] The agreement noted that Reaves "informed the plaintiffs that Horace Mann has completely denied coverage or any obligation to pay any of the claims or damages asserted by the plaintiffs in" the underlying action. It also memorialized plaintiffs' belief "that the Horace Mann insurance policy provides coverage for Reaves," and that they intended to pursue claims against defendant.[32]

To that end, A.S. and her parents commenced this action against defendant in the Circuit Court of Madison County, Alabama, on December 21, 2011.[33] As previously noted, defendant removed the case to this court on January 25, 2012;[34]

---

[29] *Id.* at 2 (boldface emphasis in original).

[30] *Id.* at 4 (alteration and italicized emphasis supplied, boldface emphasis in original).

[31] Doc. no. 20-5 (Settlement Agreement) ¶ 1; *see also* doc. no. 19-1 (Defendant's Summary Judgment Brief) ¶ 5.

[32] Doc. no. 20-5 (Settlement Agreement) ¶ 6.

[33] *See* doc. no. 1-2 (Complaint).

[34] *See* doc. no. 1 (Notice of Removal).

defendant then moved for summary judgement on May 1, 2013; and, plaintiffs have not filed a response.[35] Defendant subsequently filed a "motion for entry of summary judgment" on June 10, 2013, arguing that plaintiffs' failure to respond constitutes abandonment of their claims.

## III.  ANALYSIS

**A.    Subject Matter Jurisdiction Under 28 U.S.C. § 1332**

The court considers its subject matter jurisdiction *sua sponte*. This case was removed on the basis of 28 U.S.C. § 1332,[36] which requires complete diversity of citizenship between the parties. Plaintiffs are residents of Alabama.[37] Defendant's notice of removal stated that it is a citizen of Illinois because it is incorporated in that state and maintains its principal place of business there.[38]  It is frequent legal shorthand to say that "[f]or purposes of the diversity statute, a corporation is a citizen of the state where it is incorporated and the state where it has its principal place of business," *Crockett v. Securitas Security Services USA, Inc.*, 278 F. App'x 863, 864

---

[35] Doc. no. 17. The court's Uniform Initial Order commands that the "responsive submission of the party opposing the motion for summary judgment shall be filed not later than 21 days after the motion for summary judgment is filed." Doc. no. 12 (Uniform Initial Order), at 12. Additionally, the court *specifically* ordered plaintiffs to respond to the motion for summary judgment on or before May 24, 2013. *See* Margin Order of May 2, 2013. Despite those orders, plaintiffs have not filed a response.

[36] *See* doc. no. 1 (Notice of Removal).

[37] *Id*. ¶ 7.

[38] *Id.* ¶ 8.

(11th Cir. 2007) (*per curiam*), but 28 U.S.C. § 1332 also provides that:

> in any *direct action* against the insurer of a policy or contract of liability insurance, whether incorporated or unincorporated, to which action the insured is not joined as a party-defendant, such insurer shall be deemed a citizen of . . . every State and foreign state of which the insured is a citizen.

28 U.S.C. § 1332(c)(1)(A) (emphasis supplied).

If that provision does *not* apply, then defendant is deemed a citizen of Illinois, and complete diversity of citizenship exists. *See* 28 U.S.C. § 1332.

On the other hand, if that provision *does* apply, then defendant is deemed to be a citizen of whichever state Reaves, the insured, is a citizen. Reaves was a citizen of Alabama in 2005 when the *underlying* action was filed,[39] and a similar conclusion in this case would destroy the diversity of citizenship. But the record does not reveal the citizenship of Reaves at the time *this case* was removed. *See Burns v. Windsor Insurance Co.*, 31 F.3d 1092, 1097 n.13 (11th Cir. 1994) (noting that jurisdictional facts are assessed at the time of removal). Thus, if § 1332(c)(1)(A) applies, the court must order discovery on that issue to ensure that it has subject matter jurisdiction.

The application of § 1332(c)(1)(A) turns upon whether this case is a "direct action." It is not. The court agrees with the analysis recently provided by Judge Kristi DuBose in *Armentrout v. Atlantic Casualty Insurance Co.*, 731 F. Supp. 2d 1249 (S.D.

---

[39] Doc. no. 20-3 (Complaint in *A.S. et al. v. Reaves et al.*, No. CV-2005-217 (Mad. Co. Ala. Cir. Ct., Feb. 2, 2005)) ¶ 4.

Ala. 2010):

> In *Fortson v. St. Paul Fire and Marine Ins. Co.*, 751 F.2d 1157 (11th Cir. 1985), the Court looked at the legislative intent behind the enactment of 28 U.S.C. § 1332(c):
>
>> That section was enacted by Congress in order to eliminate the basis for diversity jurisdiction in states that allow an injured third-party claimant to sue an insurance company for payment of a claim without joining the company's insured as a party, where the insured would be a non[-]diverse party, even though the party insurance company would otherwise be diverse.
>
> *Id.* at 1159 (citing *Hernandez v. Travelers Ins. Co.*, 489 F.2d 721, 723 (5th Cir.) *cert. denied*, 419 U.S. 844, 95 S. Ct. 78, 42 L. Ed.2d 73 (1974)). The *Hernandez* opinion from which *Fortson* derived the above statement, however, states in relevant part:
>
>> Congress intended that wherever a party claiming to have suffered injuries or damage for which another is legally responsible is entitled to sue the other's liability insuror [*sic*] without joining the insured *and without having first obtained a judgment against the insured*, the insurer shall be deemed a citizen of the State of which the insured is a citizen as well as of any State by which the insurer has been incorporated and of the State where it has its principal place of business, for the purposes of determining whether diversity jurisdiction exists.
>
> *Hernandez*, 489 F.2d at 722 (emphasis added) (citing *Vines v. United States Fidelity & Guaranty Co.*, 267 F. Supp. 436 (E.D. Tenn.1967)).

*Armentrout*, 731 F. Supp. 2d at 1254.  Judge DuBose then observed that § 27-23-2 of the Alabama Code — *i.e.*, the statute at issue in this case — clearly "requires that

10

a plaintiff obtain a final judgment against an insured *before* suing an insurer." *Id.* at 1255 (emphasis supplied); *see also id.* at 1254; Ala. Code § 27-23-2 (1975) (2007 Replacement Vol.) (conditioning a suit against the insurer "[u]pon the recovery of a final judgment against" the insured). Consequently, a suit based upon that statute is not a "direct action" against the insurer, and § 1332(c)(1)(A) does not apply. *Armentrout*, 731 F. Supp. 2d at 1254-55.

That result holds *even if*, contrary to Judge DuBose's analysis, *Fortson* did *not* adopt *Hernandez*'s requirement that, in order to be a direct action against an insurer, the suit must have been initiated "without having first obtained a judgment against the insured." *Hernandez*, 489 F.2d at 722. *Hernandez* is binding precedent in this Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (adopting as binding precedent all decisions of the former Fifth Circuit rendered prior to September 30, 1981). To the extent *Fortson* and *Hernandez* are in tension, *Hernandez* controls. "[W]hen circuit authority is in conflict, a panel should look to the line of authority containing the earliest case." *Walker v. Mortham*, 158 F.3d 1177, 1188 (11th Cir. 1998); *see also id.* at 1188-89 (referring to the rule as "emphatic" and "firmly established in the Eleventh Circuit"). Indeed, that rule follows inexorably from Eleventh Circuit authority stating that only an *en banc* panel or the U.S. Supreme Court can overrule a prior panel's decision. *United States v. Archer*, 531 F.3d 1347,

11

1352 (11th Cir. 2008); *Bonner*, 661 F.2d at 1209.  In other words, the *Fortson* panel did not have the authority to overrule *Hernandez*'s conclusion that a suit against an insurer is *not* a direct action when a judgment was *first* obtained against the insured.

In summary, this case is not a "direct action" within the meaning of 28 U.S.C. § 1332(c)(1)(A).  As a result, defendant is a citizen of Illinois, complete diversity of citizenship between the parties exists, and the court has subject matter jurisdiction.  Accordingly, the court proceeds to the merits of defendant's motion for summary judgment.

**B.     The Insurance Policy Does Not Cover Reaves's Rape of A.S.**

The Alabama statute at the center of this case provides:

> Upon the recovery of a final judgment against any person . . . by any person . . . for loss or damage on account of bodily injury . . . if the defendant in such action *was insured against the loss or damage at the time when the right of action arose*, the judgment creditor shall be entitled to have the insurance money provided for in the contract of insurance between the insurer and the defendant applied to the satisfaction of the judgment, and if the judgment is not satisfied within 30 days after the date when it is entered, the judgment creditor may proceed against the defendant and the insurer to reach and apply the insurance money to the satisfaction of the judgment.

Ala. Code § 27-23-2 (1975) (2007 Replacement Vol.) (emphasis supplied).  For the statute to apply, Reaves must have been covered within the meaning of defendant's insurance policy at the time he raped A.S.  Defendant offers two reasons why

12

Reaves's actions were not covered by the policy: rape is not an "educational employment activity"; and, damages resulting from intentional acts are excluded from coverage. Both arguments have merit.

Section II.E.1 of the insurance policy defines "educational employment activities" as activities undertaken by the insured "pursuant to the express or implied terms of his or her employment by" a school district.[40] In *Horace Mann Insurance Co. v. Fore*, 785 F. Supp. 947 (M.D. Ala. 1992), the Middle District of Alabama considered whether an identical insurance policy provision covered a teacher's sexual abuse of three special education students. *Id.* at 948-49. The opinion in *Fore* noted that "it is intuitively obvious that sexual abuse is not an activity concerned with education," and then found "no Alabama authority that disputes this eminently reasonable conclusion." *Id.*

Six years later, the Alabama Court of Civil Appeals confronted another case of sexual abuse by a teacher that also involved a definition of "educational employment activities" identical to the one in *Fore* and in this case. *See Horace Mann Insurance Co. v. D.A.C.*, 710 So. 2d 1274, 1275 (Ala. Civ. App. 1998). The Court approvingly quoted the *Fore* opinion before adopting its analysis, and noting that "no Alabama authority . . . dispute[s *Fore*'s] conclusion." *Id.* (alteration supplied). Indeed, the

---

[40] Doc. no. 20-2 (Insurance Policy), at 2. The policy also provides alternative definitions in Sections II.E.2-3, but neither of those provisions are implicated on these facts.

13

holdings in *Fore* and *D.A.C.* align with the well-established general principle that "sexual misconduct by an employee is purely personal and outside the line and scope of his employment." *Doe v. Swift*, 570 So. 2d 1209, 1211 (Ala. 1990); *see also Anonymous v. Lyman Ward Military Academy*, 701 So. 2d 25, 27 (Ala. Civ. App. 1997). This court restates what should be obvious: a teacher's rape of a student is not an "educational employment activity," *i.e.*, an act undertaken pursuant to the express or implied terms of the teacher's employment with a school district. Thus, defendant's insurance policy did not cover Reaves's rape of A.S. and, as a result, plaintiffs' claim under § 27-23-2 cannot succeed.

Additionally, the policy at issue does not cover "intentional damages," *i.e.*, "[o]ccurrences involving damages which are the intended consequence of action taken by the insured or at the insured's direction."[41] In *State Farm Fire and Casualty Co. v. Davis*, 612 So. 2d 458 (Ala. 1993), the Alabama Supreme Court considered whether similar language in a different policy barred liability coverage in a child sex abuse case. *Id.* at 459. The Court adopted an "inferred-intent rule" in sexual abuse cases,

---

[41] *Id.* at 4 (alteration supplied). The policy contains three exceptions to that exclusion for: allegations of corporal punishment; allegations of civil rights violations; and the existence of evidence indicating that the insured's actions were not the intended consequence of his actions. *Id.* But those exceptions either do not apply on these facts or fail as a matter of law. *See Horace Mann Insurance Co. v. McGee*, 840 F. Supp. 875, 878-79 (M.D. Ala. 1994) (concluding that the second and third exceptions are rendered inapplicable by *State Farm Fire and Casualty Co. v. Davis*, 612 So. 2d 458 (Ala. 1993)).

whereby an insured's "intent to injure is inferred [from the insured's sexually abusive actions] *as a matter of law* regardless of claimed intent." *Id.* at 463-64 (alteration and emphasis supplied). As a result, the Court held that the insurance policy excluded from coverage the insured's sexual molestation of four female minors. *Id.* at 459, 464-65. Applying the inferred-intent rule articulated in *Davis* to this case, Reaves is deemed by operation of law to have intended to injure A.S. *See Universal Underwriters Insurance Co. v. Stokes Chevrolet, Inc.*, 990 F.2d 598, 603 n.10 (11th Cir. 1993) ("Alabama has affirmatively adopted an irrebuttable presumption of intent to cause injury . . . in the realm of the sexual abuse and molestation of children."). Therefore, his actions are excluded from liability coverage, and plaintiffs' claims cannot succeed. *See Horace Mann Insurance Co. v. McGee*, 840 F. Supp. 875, 877-78 n.4 (M.D. Ala. 1994) (applying *Davis* to identical policy language, and holding that the "intentional damages" exclusion precludes coverage).

## IV.  CONCLUSION AND ORDER

For all the foregoing reasons, defendant's motion for summary judgment and its "motion for entry of summary judgment" are GRANTED,[42] and all claims are DISMISSED with prejudice. Costs are taxed to plaintiffs. The clerk is directed to close this file.

---

[42] Doc. no. 17; doc. no. 21.

DONE and ORDERED this 8th day of July, 2013.

_____
United States District Judge